**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| **DELTA ELECTRONICS (AMERICAS) LTD., DELTA ELECTRONICS (USA) INC., DEI LOGISTICS (USA) CORPORATION, DET LOGISTICS (USA) CORPORATION, DELTA INTELLIGENT BUILDING TECHNOLOGIES (INTERNATIONAL) CORPORATION (DBA MARCH NETWORKS), UNIVERSAL INSTRUMENTS CORPORATION, DELTA INTELLIGENT BUILDING TECHNOLOGIES (USA) LLC, AND VIVOTEK USA, INC.,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **UNITED STATES OF AMERICA; and UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT,** *in his official capacity as Commissioner of United States Customs and Border Protection* <br><br> **Defendants** | **Court No. 26-03092** |

**COMPLAINT**

Delta Electronics (Americas) Ltd., Delta Electronics (USA) Inc., DEI Logistics (USA) Corporation, DET Logistics (USA) Corporation, Delta Intelligent Building Technologies (International) Corporation (d/b/a March Networks), Universal Instruments Corporation, Delta Intelligent Building Technologies (USA) LLC, and Vivotek USA, Inc. (the "Delta Entities" or "Plaintiffs"), by and through their undersigned counsel, allege the following:

1. The Delta Entities are the importers of record for a variety of power electronics and switching systems, industrial automation, thermal management, telecommunications equipment and other merchandise subject to tariffs, *i.e.*, duties, imposed pursuant to a series of

Executive Orders in which the President invoked the International Emergency Economic Powers Act ("IEEPA") as authority.  Plaintiffs are responsible for paying these tariffs.  As with challenges raised by other similarly situated plaintiffs, Plaintiffs bring this action to seek refunds of IEEPA duties, including return of deposits for Plaintiffs' entries that remain unliquidated and reliquidation without IEEPA duties of any liquidated entries.

2.      Since February 2025, the President of the United States has signed a series of Executive Orders invoking IEEPA as the basis for imposing broad new tariffs ("IEEPA duties") on goods entering the United States from nearly every country, including China.  As importers of record, the Delta Entities are responsible for tendering payment of IEEPA duties on goods they import into the United States to Defendant U.S. Customs and Border Protection ("CBP" or "Defendant") and have paid such duties.

3.      On February 20, 2026, the U.S. Supreme Court struck down these duties, holding that "IEEPA does not authorize the President to impose tariffs."  *See Learning Resources, Inc. v. Trump*, No. 24-1287, Slip Op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).  The Supreme Court's decision invalidated the legal basis for the IEEPA tariff regime.

4.      The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade under 19 U.S.C. § 1581(i). *Id*. at 5, n.1.  Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers, including Plaintiffs.

5.      As CBP retains ongoing authority over liquidation of Plaintiffs' entries, this Court may and should enter permanent injunctive relief ensuring that liquidation occurs consistent with governing law (*i.e.*, without the imposition of IEEPA duties).  Because the Supreme Court has

resolved the merits and CBP retains authority over the liquidation of Plaintiffs' entries, permanent injunctive relief directing lawful liquidation is both necessary and appropriate under 28 U.S.C. § 2643(c)(1).

6.      Plaintiffs bring this action to secure its own declaratory and permanent injunctive relief, specifically, that (i) all of its import entries that remain unliquidated are liquidated without IEEPA duties with all duty deposits collected pursuant to the unlawful IEEPA tariff regime refunded with interest, and (ii) all liquidated entries are reliquidated without IEEPA duties and the overpayments refunded with interest.  To the extent any covered entries liquidate during the pendency of this action, Plaintiffs seek appropriate equitable relief including reliquidation and a full refund with statutory interest.

7.      While the Supreme Court has held that the IEEPA duties and the underlying Executive Orders are illegal, there exists a risk that importers may not be assured refunds of the unlawfully collected tariffs without their own court judgment providing judicial relief.  *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025); *see also Trump v. CASA,* 606 U.S. 831 (2025).

8.      Accordingly, with respect to all import entries for which it paid IEEPA duties, the Delta Entities seek (i) an injunction barring Defendants from continuing to assess or collect IEEPA duties; and (ii) an order requiring Defendants to immediately refund all IEEPA duties Plaintiffs already paid on their covered imports plus interest.  To the extent that Plaintiffs' entries subject to IEEPA duties have already liquidated or liquidate during the pendency of this action, Plaintiffs also seek remedial relief in the form of reliquidation such that Plaintiffs can receive a refund (with interest) of all IEEPA duties paid.

**PARTIES**

9.      The Delta Entities are importers of a variety of power electronics, industrial automation products, thermal and cooling solutions, and other products from the People's Republic of China and Taiwan, among other countries.  Plaintiffs are the importers of record for this merchandise.

10.      Defendant, the United States of America, is the federal government of the United States of America.  Defendant United States of America imposed and received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

11.      Defendant United States Customs and Border Protection ("CBP") is a component agency of the United States Department of Homeland Security ("DHS"), headquartered in Washington, D.C.  CBP is responsible for administering and collecting duties and taxes on goods imported into the United States.

12.      Defendant Rodney S. Scott is the Commissioner of CBP and is named as a Defendant in his official capacity.

**JURISDICTION AND STANDING**

13.      The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i).  *See Learning Resources*, Slip Op. at 5, n.1; *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).

14.      In addition, this Court possesses the same equitable authority as a federal district court under 28 U.S.C. § 1585.  Where a civil action arises under 28 U.S.C. § 1581(i), this Court possesses broad equitable authority under 28 U.S.C. §§ 1585 and 2643(c)(1) to grant declaratory

4

and permanent injunctive relief, including orders directing lawful liquidation or reliquidation of entries and refunds of unlawfully exacted duties, together with statutory interest.

15.     Plaintiffs have standing to pursue this action because they are the importers of record for merchandise imported into the United States from countries subject to the IEEPA duties as implemented and collected by CBP – duties that have been held by the Supreme Court to be unlawful.

16.     Plaintiffs have paid IEEPA duties pursuant to those very Executive Orders that have been found to be unlawful and have therefore suffered direct injury.  The relief Plaintiffs seek from this Court would redress those injuries.

## GENERAL PLEADINGS

**I.     The President has Issued Multiple Tariff Orders Invoking IEEPA Authority.**

   **A.     The IEEPA Tariff Orders**

17.     On February 1, 2025, the President issued three Executive Orders imposing new tariffs on imports from Mexico, Canada, and China.  Each order invoked IEEPA as the statutory basis for authorizing the tariffs.  Each order justified the tariffs as necessary to address a claimed national emergency related to risks arising from alleged trafficking of illegal drugs into the United States and/or risks arising from illegal immigration.  Collectively, the Complaint refers to these as the "Trafficking Tariff Orders."

18.     Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff Order"),[1] imposed an additional 25 percent tariff on imports from Mexico.  The order justified the use of emergency powers by citing risks

---

[1] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025).

allegedly arising from an influx of illegal immigration and illicit drugs into the United States and Mexico's alleged failure to take action to counter those risks. *Id.*

19.    Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"),[2] similarly declared an emergency tied to opioid trafficking and imposed a 25 percent additional tariff on imports from Canada, with certain exceptions.

20.    A third order, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff Order"),[3] declared a national emergency related to opioid trafficking, asserting that "the sustained influx of synthetic opioids" constituted a national emergency and claimed that chemical suppliers based in China evaded enforcement efforts by hiding "illicit substances in the flow of legitimate commerce."  This order imposed an additional 10 percent *ad valorem* duty on imports of Chinese goods.

21.    On March 3, 2025, the President issued an amendment to the prior China Tariff Order via Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment").[4]  This amendment increased the tariff rates imposed by the February 1, 2025

---

[2] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025) ("energy or energy resources" from Canada were subject to an additional 10 percent tariff).

[3] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025).

[4]  Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

China Tariff Order to 20 percent on the basis that China had "not taken adequate steps to alleviate the illicit drug crisis".[5]

22.    The following month, on April 2, 2025, citing the persistent U.S. trade deficit as a separate national emergency, the President issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficit* ("Reciprocal Tariff Order").[6]  This order imposed a baseline 10 percent tariff on nearly all U.S. imports effective April 5, 2025, and increased the "reciprocal" tariffs on 56 countries and the member states of the European Union effective April 9, 2025.

23.    On August 6, 2025, after the *V.O.S. Selections* complaint was filed, the President issued Executive Order 14329 of August 6, 2025, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025).  This Executive Order imposed an additional 25% *ad valorem* tariff on imports from India for "directly or indirectly importing Russian Federation oil." *Id*.  As a result, most Indian-origin goods were subject to a combined 50 percent IEEPA-based tariff effective August 27, 2025.

24.    In implementing these Executive Orders (collectively, the "IEEPA Tariff Orders"), the Defendants directed modifications to the Harmonized Tariff Schedule of the United States ("HTSUS") so that merchandise subject to the new duties would enter under newly assigned (Chapter 99) tariff codes.

---

[5] *Id*.

[6] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

**B.**      **Subsequent Litigation Challenging the IEEPA Tariff Orders**

25.      On April 14, 2025, multiple companies filed an action in this Court challenging the legality of the Trafficking Tariff Orders and Reciprocal Tariff Order.  *See V.O.S. Selections, et al. v. Donald Trump, et al.*, No. 25-066 (Ct. Int'l Trade 2025).  This Court held that the orders were unlawful, and the Federal Circuit and Supreme Court affirmed.  *See Learning Resources*, 607 U.S. ___, Slip Op. at 4.

26.      Since April 2025, the President has issued additional Executive Orders imposing or modifying tariffs under IEEPA.  Per the Supreme Court's decision, it is now clear that IEEPA does not authorize tariffs—full stop.  *Learning Resources*, 607 U.S. ___, Slip Op. at 20 ("[T]he terms of IEEPA do not authorize tariffs"); *see also id.* at 16 ("We do not attempt to set forth the metes and bounds of the President's authority to "regulate . . . importation" under IEEPA…  Our task today is to decide only whether the power to "regulate . . . importation," as granted to the President in IEEPA, embraces the power to impose tariffs.  **It does not**." (emphasis added)).  As a result, all of the IEEPA Tariff Orders, including the Reciprocal Tariff Order, the Trafficking Tariff Orders, and the tariffs imposed upon imports from India pursuant to Executive Order 14329, were unlawful *ab initio*.

27.      On November 11, 2025, a U.S. importer of merchandise subject to IEEPA duties filed an action in this Court challenging the legality of the IEEPA Executive Orders.  *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, No. 25-255 (Ct. Int'l Trade filed Nov. 11, 2025), ECF No. 3.  The instant action is comparable to the cases consolidated under Court No. 25-255.

28.      On December 15, 2025, this Court denied AGS Company Automotive Solutions' motion for preliminary injunction, finding that plaintiffs are not at risk of experiencing

irreparable harm as a result of liquidation because this Court has the authority to order

reliquidation in cases involving constitutional challenges to duties under 28 U.S.C. § 1581(i).

*AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No.

25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).  In *AGS* and others involving IEEPA

duties, "the Government has taken the 'unequivocal position' that 'liquidation will not affect the

availability of refunds after a final decision' in *V.O.S.*"  *Id*. at 8.

29.     Additionally, on March 4, 2026, this Court entered an order "that, with respect to

any and all unliquidated entries that were entered subject to the IEEPA duties, U.S. Customs and

Border Protection is hereby directed to liquidate those entries without regard to the IEEPA

duties. Any liquidated entries for which liquidation is not final shall be reliquidated without

regard to IEEPA duties." *Atmus Filtration, Inc. v. United States*, Case No. 26-01259, Order at

*2-3 (CIT Mar. 4, 2026).  This Court further clarified that "All importers of record whose entries

were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Id.*

at 1.  The effect of that order was temporarily suspended on March 6, 2026.  *Atmus Filtration,*

*Inc. v. United States*, Case No. 26-01259, Order at *1 (CIT Mar. 6, 2026).  On March 27, 2026,

this Court modified its March 4, 2026 order by expanding its scope to cover refunds for "finally"

liquidated entries as well.  For the avoidance of doubt, Plaintiffs seek a court order directing CBP

to reliquidate all of the Delta Entities' "finally" liquidated entries as well.

30.     On April 7, 2026, this Court entered an equivalent order to the March 4, 2026

order in *Atmus Filtration*, in a separate case.  *See Euro-Notions Florida, Inc. v. U.S. Customs*

*and Border Protection et al.*, No. 25-00595, Order (Dkt. 12) (CIT Apr. 7, 2026).

31.     Now that the Supreme Court has held that the President lacked the authority to

impose tariffs under IEEPA, and this Court has held that importers of record whose entries were

subject to IEEPA duties are entitled to refunds, Plaintiffs seek relief consistent with these decisions.

**C.      Implementation of the Challenged IEEPA Tariffs by Defendant CBP**

32.      CBP is responsible for administering and collecting duties imposed under U.S. law, including the IEEPA-based tariffs at issue.  *See* 19 U.S.C. §§ 1500, 1502.

33.      Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the HTSUS.  *See* 19 U.S.C. § 1292; Pub. L. No. 100-418, 102 Stat. 1107 (1988).  Under the HTSUS framework, CBP classifies goods entering the United States using an organized structure of chapters, headings, and subheadings, each identifying goods and corresponding duty rates.  The HTSUS headings cover broad categories of merchandise, while the subheadings provide more specific classifications.

34.      CBP regulations govern how merchandise must be classified and appraised under the HTSUS.  *See* 19 C.F.R. § 152.11.

35.      The United States International Trade Commission ("USITC") publishes and maintains the HTSUS in accordance with presidential directives.  *See* 19 U.S.C. §§ 1202, 3005, 3006.

36.      When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS.  19 U.S.C. §§ 1202, 1500, 1502.  To facilitate the collection of tariffs, CBP uses its Cargo Systems Messaging Service ("CSMS") to inform

importers of changes to the amount and administration of import duties. CBP's guidance incorporated the duties imposed under the IEEPA Tariff Orders.[7]

37.    In implementing the IEEPA Tariff Orders, CBP required that goods subject to the IEEPA duties be classified under newly created tariff codes – codes that exist solely because of the Executive Orders that the Supreme Court has declared unlawful.

### D.    Liquidation

38.    CBP's regulations define "Liquidation" as "the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

39.    When goods enter the United States, the importer of record pays estimated duties based on the declared value of the goods, the country of origin, and HTSUS classification. *See* 19 U.S.C. § 1484. CBP reviews the entry declaration and examines the merchandise.

40.    After review, CBP finalizes the classification, value, duty rate, and total duties owed. *See* 19 U.S.C. § 1500. CBP then "liquidates" the entry by notifying the importer of the final calculation. *See* 19 U.S.C. § 1504. Upon liquidation, CBP will notify the importer if additional duties are owed or if the importer is entitled to a refund of a portion of the estimated duties paid.

---

[7] *See, e.g.*, U.S. CUSTOMS & BORDER PROT., CSMS # 64297449, *Guidance: Additional Duties on Imports from Canada* (Mar. 3, 2025), available at
https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d519e9; U.S. CUSTOMS & BORDER PROT., CSMS # 64297292, *Guidance: Additional Duties on Imports from Mexico* (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d5194c; U.S. CUSTOMS & BORDER PROT., CSMS # 64299816, *Update – Additional Duties on Imports from China and Hong Kong* (Mar. 3, 2025), available at
https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d52328; U.S. CUSTOMS & BORDER PROT., CSMS # 64680374, *Guidance – Reciprocal Tariffs, April 5 and April 9, 2025, Effective Dates* (Apr. 8, 2025), available at
https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3daf1b6.

41.    Unless extended, liquidation must occur within one year from the date of entry. *See* 19 U.S.C. § 1504(a).  As a matter of practice, CBP typically liquidates duties within 314 days after entry and posts public notices of liquidation.

42.    This Court has equitable power to suspend liquidation where necessary.  *See, e.g.,* *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

43.    After liquidation occurs, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the entry. 19 U.S.C. § 1514.  An importer may protest "any clerical error, mistake of fact, or other inadvertence . . . in any entry, liquidation, or reliquidation, and, decisions of the Customs Service".  *Id.*  However, where CBP acts in a ministerial capacity, *i.e.*, without discretion, such as by applying a duty rate without discretion, courts have held that the liquidation generally cannot be protested.  *See Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024); *see also Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001) ("Customs is powerless to perform any active role in the determination of the constitutionality of the assessment.").

44.    In a separate, parallel action, *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol. Court No. 25-255, this Court recognized that plaintiffs "'are not required to file a protest' in cases involving constitutional challenges to duties" and concluded that "this court has the authority to order reliquidation in cases involving constitutional challenges to duties under 28 U.S.C. § 1581(i)."  Slip. Op. 25-154 at 7-8 (internal citations omitted).

45.    Moreover, in *AGS*, the Government has taken the position that it will not oppose the court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if

such duties are found to be unlawful. *Id.* 3-4. The Government has taken the same position in other cases involving IEEPA tariffs, *id.* at n.1.

## II.    The Supreme Court Has Held the IEEPA Duties Are Not Authorized.

46.    The challenged IEEPA Tariff Orders, including the Trafficking Tariff Orders and Reciprocal Tariff Orders, cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, the Trade Act of 1974, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as sources of authority. None of these statutes gives the President the power to impose tariffs. Indeed, the U.S. Supreme Court has now expressly held that IEEPA does not authorize the President to impose any tariffs. *Learning Resources*, 607 U.S. ___, Slip Op. at 20. This extends to all of the IEEPA Tariff Orders, including the Trafficking Tariff Orders, the Reciprocal Tariff Orders, and secondary tariffs on imports from India under Executive Order 14329.

## III.    Plaintiffs Paid IEEPA Duties.

47.    As of the date of this Complaint, the Delta Entities have paid IEEPA duties imposed under the IEEPA Tariff Orders on its imports from Taiwan and China, among other countries. These are the very same Executive Orders that were found unlawful by the U.S. Supreme Court.

48.    Plaintiffs' imports subject to IEEPA duties entered the United States under newly created HTSUS codes that exist only because of the unlawful tariff regime.

49.    The past import entries for which Plaintiffs paid IEEPA duties have already begun to liquidate, and will continue to liquidate in the coming months. For the avoidance of doubt, Plaintiffs seek recovery for all IEEPA duties, including those that have liquidated or liquidate during the pendency of this action. This Court has confirmed that it has the equitable authority to direct reliquidation of entries that have liquidated without regarding to IEEPA duties.

13

50.     Based on Plaintiffs' knowledge and belief, CBP has advised importers that it will not be extending liquidation for entries subject to IEEPA tariffs.  Without judicial relief, these entries will continue to liquidate, potentially complicating Plaintiffs' relief.

**STATEMENT OF CLAIMS**

***COUNT I*:     THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER *LEARNING RESOURCES* AND *V.O.S. SELECTIONS***

51.     Plaintiffs incorporate by reference paragraphs 1-50 above.

52.     The Supreme Court has held in *Learning Resources* (combined on appeal with *V.O.S. Selections*) that the President exceeded the authority conferred by IEEPA when he imposed the challenged tariffs.  As this Court explained in its opinion, IEEPA authorizes the President to "investigate, regulate, or prohibit" certain categories of transactions involving foreign countries during a national emergency, but it does not authorize the imposition of tariffs or duties on imported goods.  Nor does it transfer tariff-imposing power from Congress to the President.  *See Learning Resources*, 607 U.S. ___, Slip Op. at 16 ("We do not attempt to set forth the metes and bounds of the President's authority to "regulate . . . importation" under IEEPA. … Our task today is to decide only whether the power to "regulate . . . importation," as granted to the President in IEEPA, embraces the power to impose tariffs. It does not.").

53.     The challenged tariffs in this Complaint are the same as those struck down in *V.O.S. Selections*.  They rely exclusively on IEEPA as the basis for imposing duties and revising the HTSUS.

54.     For the same reasons articulated by the Supreme Court, the Federal Circuit, and this court, the challenged tariffs in this case exceed the President's statutory authority and are therefore unlawful and void as to Plaintiffs.

14

55.     This Court is bound by the *Learning Resources* decision.  As a result of that decision, Plaintiffs respectfully request this Court enter a permanent injunction directing CBP:

(a)     to liquidate all of Plaintiffs' unliquidated entries without assessment of IEEPA duties;

(b)     to refund all IEEPA duty deposits collected on such entries;

(c)     to reliquidate all liquidated entries without IEEPA duties; and

(d)     to pay statutory interest pursuant to 19 U.S.C. § 1505(c).

56.     To the extent any covered entries have already liquidated or liquidate prior to final judgment, Plaintiffs further request equitable relief including reliquidation to effectuate the Court's judgment.

## *COUNT II*:   **DECLARATORY AND INJUNCTIVE RELIEF**

57.     Plaintiffs incorporate by reference paragraphs 1-57 above.

58.     Under 28 U.S.C. § 2201(a), federal courts may declare the rights and legal relations of parties where an actual controversy exists.

59.     An actual controversy exists here concerning the President's asserted authority to impose tariffs under IEEPA, the constitutionality of IEEPA, and CBP's authority to implement and collect the resulting duties.

60.     Plaintiffs have suffered injury by having been required to pay IEEPA duties as a result of the IEEPA Tariff Orders on merchandise Plaintiffs have imported into the United States.

61.     This Court may exercise its equitable authority to issue a declaratory judgment that the challenged IEEPA Tariff Orders are unlawful for any of the reasons set forth above, and that CBP lacks authority to implement or collect the resulting duties as to Plaintiffs.

**REQUEST FOR RELIEF**

Plaintiffs respectfully request that this Court:

a)    Declare that, with respect to Plaintiffs, CBP lacks the authority to implement and collect any tariffs set out in the HTSUS that are based on the challenged tariff orders;

b)    Enjoin CBP from imposing, enforcing, or collecting any IEEPA duties on Plaintiffs' entries;

c)    Order CBP to liquidate all of Plaintiffs' unliquidated entries without IEEPA duties;

d)    Order CBP to reliquidate all of Plaintiffs' liquidated entries without IEEPA duties, including entries with IEEPA duties for which liquidation is final;

e)    Order the United States to refund all IEEPA duties collected from Plaintiffs on all entries subject to IEEPA duties, with statutory interest;

f)    To the extent any covered entries liquidate during the pendency of this action, order appropriate equitable relief, including reliquidation where necessary to effectuate this Court's judgment; and

g)    Grant such further relief as this Court deems proper.

Respectfully submitted,

*/s/ Stephan E. Becker*

Stephan E. Becker
Julian M. Beach

**Pillsbury Winthrop Shaw Pittman LLP**
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
202-663-8277

*Counsel for Plaintiffs*

Dated: June 15, 2026

16